IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 12-150-TUC-JGZ (GEE) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| JOSE JESUS FIERROS, | |
| Defendant. | |

The District Court referred this case to the Magistrate Judge for hearing on pretrial motions. Hearing on the defendant's Motion to Suppress was held on April 17, 2012. Upon consideration of the evidence and the arguments of respective counsel, the magistrate recommends the District Court, after its de novo review, **DENY** the Motion to Suppress.

## CHARGES:

The defendant is charged with possessing 128 kilograms of marijuana with the intent to distribute.

## MOTION TO SUPPRESS:

Defendant argues that all evidence seized as a result of the stop of the vehicle he was driving on December 20, 2011, must be suppressed because the stop was "made without

1   probable cause or founded suspicion."

2   *Testimony of Brian William Sams (BPA):*

3       Sams has been a Border Patrol agent for three years and has worked in the Sonoita 4   area during that period. At about 2 p.m. on December 20, 2011, he was beginning his shift 5   and getting into his service vehicle at the Border Patrol substation in Sonoita when he saw 6   a maroon colored GMC , extended cab, pickup truck driving eastbound on Hwy. 82 pass his 7   location. He stated the substation is located just off Hwy. 82, about 100 yards from where 8   Hwy 82 intersects with Hwy. 83.

9       Sams testified he was approximately 30 feet from the maroon truck as it passed him; 10   he was located on the passenger side of the truck and the truck's windows were down. He 11   saw rectangular bundles covered with a blanket in the rear of the truck's cab. Sams stated that 12   about a month previous he had seen bundles stacked similarly in an extended cab truck while 13   he was on duty at a Border Patrol checkpoint and the bundles were found to contain 14   marijuana.

15       His interest was further aroused when the driver made eye contact with him (Sams) 16   and continued to look at him–even turning in his seat--as the truck passed him. The truck's 17   license plate started with "AMT" which suggested to Sams that the plate was recently issued; 18   Sams testified that in his experience vehicles loaded with marijuana very often have newer 19   license plates.

20       Sams got into his service vehicle and decided to further investigate. He caught up 21   with the maroon truck about two minutes later and found that a sedan was traveling closely 22   behind the maroon truck. There no other traffic and the sedan did not attempt to pass the 23   maroon truck even though there was opportunity to do so. The license plate of the sedan 24   began with the letters "AMS", and this indicated to Sams that the plates on the sedan were 25   also recently issued. Furthermore, the agent testified that although he made several efforts 26   to get between the sedan and the maroon truck he was unable to do so because each time the 27   sedan would pull closer to the maroon truck. He concluded the sedan was traveling in 28   tandem with the maroon truck as a "heat" vehicle. He testified that there were times when

1  the sedan was only a "couple feet" behind the maroon truck.

2  Sams stated he was able at some point to get in front of both the maroon truck and the
3  sedan; he then fell back, was able to get between the vehicles, and then turned on his
4  emergency lights. The maroon truck slowed, pulled into a RV park and came to a stop. The
5  truck was found to contain bundles of marijuana and the driver was arrested.

6  On cross-examination Sams testified that the speed limit outside the Border Patrol
7  substation was 35 mph. While he was at his service vehicle and trying to locate the vehicle's
8  antenna, Sams saw the maroon truck approaching his location at the speed limit. He stated
9  that a "heat" vehicle is one used to either distract law enforcement from the load vehicle or
10 to block law enforcement contact with the load vehicle. Defense counsel showed Sams
11 Exhibits 1 through 6 which were photos taken of the maroon truck after it was taken to the
12 impound lot. Sams admitted that in those photos the truck's windows appeared to tinted and
13 the windows were rolled up. He stated did not drive the maroon truck to the impound lot and
14 does not know who did. Sams restated that the maroon truck's windows on the passenger
15 side were rolled down when he first saw it pass his location. Sams also stated he was unable
16 to run a records check on either of the vehicles because his radio was not functioning; he
17 testified he was later able to establish contact when he used another radio channel.

18 Sams testified that to his knowledge the driver of the maroon truck committed no
19 traffic violations while he (Sams) attempted to catch up with him. He also admitted that he
20 does not recall whether he saw the sedan at any time before he decided to further investigate
21 after the maroon truck first passed his location outside the Border Patrol substation. He also
22 stated he did not smell any marijuana before he turned on his emergency lights to stop the
23 maroon truck.

24

25 **DISCUSSION:**

26 An investigative traffic stop must be justified by reasonable suspicion. *United States v.*
27 *Miguel,* 368 F.3d 1150 (9th Cir.2004). "Reasonable suspicion is formed by specific,
28 articulable fact which, together with objective and reasonable inferences, form the basis for

- 3 -

1 suspecting that the particular person detained is engaged in criminal activity." *Id.* The
2 court"must look at the totality of the circumstances of each case to see whether the detaining
3 officer has a particularized and objective basis for suspecting legal wrongdoing." *United*
4 *States v. Arvizu,* 534 U.S. 266, 273 (2002)(internal punctuation removed).  The court may
5 consider, *inter alia,* (1) characteristics of the area; (2)proximity to the border; (3) usual
6 patterns of traffic and time of day: (4) previous alien or drug smuggling in the area; (5)
7 behavior of the drive(r) including obvious attempts to evade officers; (6) appearance or
8 behavior of the passengers; (model and appearance of the vehicle; and (8) officer experience."
9 *United States v. Tiong,* 224 F.3d 1136, 1139 (9th Cir.2000).

10      In the present case this court believes the vehicle stop was justified by reasonable
11 suspicion.  Sams stated that through an open window he saw rectangular bundles covered with
12 a blanket as the maroon truck drove pass him at 35 mph, and he had previously seen similar
13 bundles containing marijuana during a narcotics seizure at a Border Patrol checkpoint.  He
14 also described how the defendant maintained eye contact with him–to the extent of even
15 turning around in his seat–as he drove pass the substation.  Furthermore, the sedan driving in
16 tandem with the maroon truck and resisting his(Sams's) efforts to get between the truck and
17 the sedan lent additional support to his belief that criminal activity was occurring.

18

19 **RECOMMENDATION:**

20      In view of the foregoing, the magistrate recommends that the District Court, after its de
21 novo review of the record, **DENY** the defendant's Motion to Suppress.  Any party may file
22 objections within 14 days after being served with a copy of this Report and Recommendation.
23 If objections are not timely filed, the party's right to de novo review may be waived.  If
24 objections are filed, the parties should direct them to the District Court **by omitting the**
25 **magistrate's initials from the caption.**

26      This Report and Recommendation is being faxed to all counsel on today's date.  The
27 Clerk of the Court is directed to send a copy of this Report and Recommendation to all counsel
28      DATED this 30th day of April, 2012.

- 4 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

_____
Glenda E. Edmonds
United States Magistrate Judge